UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD KISSNER,

                    Petitioner,          Case No. 2:12-cv-14478

v.                                         United States District Judge
                                                  Paul D. Borman

CINDI CURTIN,

                    Respondent.
_____/

**OPINION AND ORDER:
(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS,
(2) DENYING CERTIFICATE OF APPEALABILITY, AND
(3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Donald Kissner ("Petitioner") filed this habeas case under 28 U.S.C. § 2254. Petitioner is currently on parole from his 40-120 month sentence for his Shiawassee Circuit Court guilty plea conviction to breaking and entering a building with intent to commit larceny. MICH. COMP. LAWS § 750.110. Petitioner asserts that his trial counsel was ineffective for advising him to accept a plea bargain rather than present a defense that he only intended to borrow the shotgun taken from the victim's home. For the reasons stated below, the Court denies the petition, denies a certificate of appealability, and denies leave to appeal in forma pauperis.

## I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> In September 2000, the victim reported that a shotgun was stolen from his home. Subsequently, defendant was charged with first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), and possession of a firearm during the commission of a felony (felony-firearm), MICH. COMP. LAWS § 750.227b.
>
> In November 2001, defendant pleaded guilty to breaking and entering a building with intent to commit larceny, MICH. COMP. LAWS § 750.110, in exchange for the prosecution's dismissal of the first-degree home invasion and felony-firearm charges. The prosecution also dismissed a charge of unlawfully driving away an automobile (UDAA), MICH. COMP. LAWS § 750.413, in another case.
>
> As the factual basis for his guilty plea, defendant stated: "I took a gun that I was not supposed to." Again, defendant stated: "I took a weapon that I was not supposed to, after entering his house." Defendant clarified that he entered the victim's house, through a door that had been closed, without permission. Defendant further explained that he took a shotgun from the victim's house and admitted that his purpose in entering the victim's house was to look for something to steal. Defendant also stated that he intended to use the gun for hunting. Thereafter, defense counsel and the prosecutor expressed satisfaction with the factual basis for the plea and agreed that the court complied with Mich. Ct. R. 6.302. Subsequently, defendant was sentenced to probation for 18 months, with seven months to be served in jail. However, in June 2002, defendant pleaded guilty to violating his probation and was sentenced to 40 to 120 months' imprisonment.
>
> In July 2012, defendant filed a motion for relief from judgment which the trial court denied. In October 2013, this Court denied defendant's delayed application for leave to appeal that order. *People*

*v. Kissner*, unpublished order of the Court of Appeals, entered October 29, 2013 (Docket No. 315188).

In October 2014, in lieu of granting defendant's application for leave to appeal, our Supreme Court remanded the case to the trial court for further proceedings because the trial court failed to advise defendant of his appellate rights at his original sentencing and at the sentencing following his probation violation. The Court ordered the trial court, upon remand, to properly advise defendant of his right to file an application for leave to appeal to this Court and any appropriate postconviction motions in the trial court, pursuant to the version of the court rules in effect at the time of his sentencing. The Court also noted that defendant was entitled to an attorney. *People v. Kissner*, 497 Mich. 873 (2014).

In April 2015, defendant filed a motion to withdraw his 2001 guilty plea pursuant to Mich. Ct. R. 6.311. Defendant argued that his plea was involuntary and unknowing because he received ineffective assistance of counsel. Defendant claimed that he was not advised that he had a valid defense to the charge—his lack of specific intent to deprive the victim of the property when he entered the dwelling. In other words, he was not told that he could not be guilty if he had a good-faith belief that he had permission to take the shotgun or if he only had the intent to borrow the shotgun. According to defendant, if he had known this, he would have refused the plea offer and opted to go to trial. Defendant requested to withdraw his plea or, in the alternative, an evidentiary hearing. The trial court denied the motion and found that an evidentiary hearing was not necessary considering defendant's sworn testimony at the plea hearing.

In November 2016, defendant filed an application for leave to appeal with this Court, as well as a motion to remand. The application was granted, limited to the issues raised in the application and supporting brief, and the matter was remanded to the trial court for an evidentiary hearing on defendant's claim of ineffective assistance of counsel. The trial court was ordered to make findings of fact and a determination on the record. Jurisdiction was retained. *People v. Kissner*, unpublished order of the Court of Appeals, entered December 28, 2016 (Docket No. 335602). At the evidentiary hearing on remand, defendant's trial counsel, defendant, and defendant's mother testified.

> Following the hearing, the trial court rejected defendant's claim, finding that: defendant's testimony at the plea hearing undermined his argument that he had a valid defense, defendant's credibility was suspect, and trial counsel was not ineffective for advising defendant to plead guilty.

*People v. Kissner*, No. 335602, 2018 WL 1020682, at *1-2 (Mich. Ct. App. Feb. 22, 2018).

Petitioner filed his initial habeas petition with this court on October 10, 2012, and soon thereafter he filed a motion to stay the case. The Court granted the motion, and the case was held in abeyance while Petitioner exhausted his state court remedies.

As indicated above, state post-conviction review proceedings were protracted as a result of the trial court's failure to inform Petitioner of his state appellate rights. After a plea withdrawal hearing was held and denied by the trial court in January of 2017, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising one claim:

> I. Mr. Kissner should be permitted to withdraw his plea because his plea was not knowingly entered since he did not receive effective assistance of counsel in entering the plea; the record shows Mr. Kissner's trial attorney was ineffective because he did not properly investigate the case or inform Mr. Kissner that he had a valid defense to the charge, and then coerced Mr. Kissner into accepting the plea because he threatened to withdraw from the case if Mr. Kissner did not plead guilty.

The Michigan Court of Appeals affirmed in an unpublished opinion. *Kissner*, 2018 WL 1020682. Petitioner subsequently filed an application for leave to appeal

in the Michigan Supreme Court that raised the same claim. The Michigan Supreme Court denied the application by standard order. *People v. Kissner*, 915 N.W.2d 468 (Mich. 2018) (Table). Thereafter Petitioner moved to reopen this case, and after further briefing, the matter is now ready for decision.

## II. Standard of Review

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must generally demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. *Id.* A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the

state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

In the present case, this standard of review applies to Petitioner's claims because the Michigan Court of Appeals rejected Petitioner's application for leave to appeal "for lack of merit in the grounds presented," which counts as an adjudication on the merits. *See Werth v. Bell*, 692 F.3d 486, 492-94 (6th Cir. 2012).

### III. Analysis

Petitioner claims that his trial counsel was ineffective for failing to investigate and present a defense that Petitioner had permission to borrow the shotgun that he removed from the victim's home rather than advise him to accept a plea bargain. The trial court rejected this claim after holding an evidentiary hearing. The Michigan Court of Appeals thereafter affirmed. Because the state court adjudication of Petitioner's claims did not involve an unreasonable application of clearly established Supreme Court law, Petitioner has failed to demonstrate entitlement to habeas relief.

Clearly established Supreme Court law sets forth a two-part test for ineffective assistance of counsel claims. First, the defendant must demonstrate that counsel's performance was so deficient that the attorney was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must overcome a strong presumption that counsel's behavior fell within the wide range of reasonable professional assistance. *Id.* at 689. Second,

the defendant must show that his counsel's deficient performance prejudiced his defense. To do so, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

When a state prisoner challenges his counsel's conduct during plea bargaining, a federal habeas court employs a "doubly deferential" standard of review that gives both the state court and the defense attorney the benefit of the doubt. *Burt v. Titlow*, 571 U.S. 12, 15 (2013). The Supreme Court has cautioned courts not to second-guess counsel's performance during plea negotiations:

> [A]dherence to the Strickland standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. AEDPA compounds the imperative of judicial caution.

7

> Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture." Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Premo v. Moore*, 562 U.S. 115, 125 (2011).

Over fifteen years after Petitioner's guilty plea, the state trial court held a hearing on Petitioner's claim. See ECF No. 14-10. Petitioner's trial counsel testified that he was appointed to represent Petitioner, and he had represented Petitioner on a number of other cases on previous occasions. *Id.* at p. 9. Counsel met with Petitioner both at the jail and at the courthouse. *Id.* at pp. 9-10. His billing records indicated that he met with Petitioner after he was appointed, at a pretrial hearing, at a hearing regarding a forensic evaluation, and at the preliminary examination. *Id.* at p. 10. Counsel also had a long meeting with Petitioner's mother. *Id.* at pp. 10, 16. Counsel indicated that it was possible he met with Petitioner on additional occasions, but due to the length of time since trial court proceedings he could not remember. *Id.* at p. 12.

In preparing for Petitioner's case, counsel read the police reports, spoke with the police officers, and had discussions with the assistant prosecutor. *Id.* at pp. 16-

8

17. Counsel had a long discussion with Petitioner about the pros and cons of entering a guilty plea versus standing trial. *Id.* at pp. 16-17. Counsel was familiar with Petitioner's mental health problems. *Id.* at p. 17. He did not personally think based on his interactions with Petitioner that he was incompetent, but he nevertheless asked for a Forensic Center evaluation. *Id.* at p. 18. Counsel learned that Petitioner knew the elderly victim. *Id.* at pp. 19-20. Contrary to Petitioner's claim, he did not tell counsel that the victim let him borrow his shotgun, but Petitioner told counsel that was what he told police. *Id.* at pp. 20-21.

Counsel explained to Petitioner, "Your options are we go to trial, explain to him it's a jury of twelve people, that if they believe that his intent was to borrow the gun, or as he had indicated, I remember in the police report that he said, told the police that it was his intent to borrow the gun, that he could be acquitted of the charges." *Id*. at pp. 21-22. Counsel informed Petitioner that the alternative was to "work out the best possible deal" to limit his sentence. *Id.* at p. 22. Counsel added, "I always tell my clients: it is your decision. I don't force them to do anything. I make recommendations." *Id.* Counsel testified that Petitioner decided to accept the plea deal. "I will tell you, he jumped at it. He said: I want to do that. He also told me that he did take the gun - he needed money, or something." *Id.*

Petitioner, on the other hand, testified that he only spoke with his attorney one time, and that he told counsel that he only intended to borrow the shotgun. *Id*. at p.

9

53. Petitioner explained that the victim lived across the street and was like a grandfather to him, and he borrowed the shotgun from him in the past. *Id.* Petitioner testified that counsel told him that if he did not take plea deal, then he would withdraw from the case. *Id*. at p. 55.

Following the hearing, the trial court ruled from the bench that Petitioner was not deprived of the effective assistance of counsel. After reciting the standard governing ineffective assistance of counsel claims, the trial court found:

> Mr. Kissner claims that he had no intent to deprive the owner of the firearm – I think it was a shotgun. Intent to deprive is an element of larceny, which was the predicate offense used to support a conviction for breaking and entering with intent. Mr. Kissner claims that he was unaware that the lack of intent to deprive meant he had a substantial defense to the charges. However, at the plea – and that's from people's exhibit 1 - Mr. Kissner acknowledged that he broke into the home with the intent to find something to steal. And I take some language from the transcript: The court: it was your purpose when you entered the house to look for something to steal? Mr. Kissner: Yes. That's at page eight through ten of the plea transcript.
>
> So, the court finds that Mr. Kissner's statement at the time of the plea, it undermines his claim that he had a valid defense. Moreover, Mr. Corwin testified that Mr. Kissner expressly stated that he intended to steal the firearm. Mr. Corwin could not have examined Mr. Kissner on the stand without suborning perjury. Mr. Kissner would have had to testify in the narrative and the court will not speculate what result that would have caused at trial. And, additionally, even though we heard his testimony - although we heard his testimony - Mr. Kissner's credibility is suspect with this court. He only raised these issues of ineffective assistance after Mr. Corwin testified against him during an obstruction of justice charge, which itself involved a falsified affidavit. So this court finds that trial counsel was not constitutionality ineffective for advising Mr. Kissner to plead guilty. In fact, Mr. Corwin spared Mr. Kissner a prison sentence. Mr. Kissner's probation violation sent him to prison,

> not the conduct of Mr. Corwin. So, the court finds that Mr. Corwin's performance was constitutionally effective and did not deprive Mr. Kissner of his constitutional right to counsel.

ECF No. 14-10, at pp. 107-08.

The Michigan Court of Appeals thereafter affirmed this decision. The appellate court deferred to the trial court's determination that Petitioner's testimony was not credible, and it found that Petitioner's testimony at the plea hearing that he intended to steal something from the victim's home belied his claim that he had a valid defense. *Kissner*, 2018 WL 1020682, at *2-4.

The state court adjudication did not involve an unreasonable application of the *Strickland* standard. With respect to the deficient performance prong, defense counsel testified that he spoke with Petitioner and was aware of the defense Petitioner proffered to police that he only intended to borrow the shotgun. Counsel informed Petitioner that he could elect to stand trial on that defense, or he could accept the plea bargain. It is worth noting that the original charge of first-degree home invasion carried a maximum twenty-year term of imprisonment. See ECF 14-2, at p. 6. The plea deal, on the other hand, called for dismissal of the original charges and for Petitioner to plead guilty to the lesser charge of breaking and entering with intent to steal. The trial court sentenced Petitioner on the reduced charge to seven months in jail (with 165 days of credit for time served) and eighteen months of probation. ECF No. 14-5, at p. 24. Petitioner's eventual lengthier term came not as

11

a result of his guilty plea but because he violated the terms of his probation. See ECF Nos. 14-3, 14-4. Affording counsel the deference due under the constitutional standard, he did not perform deficiently in advising Petitioner regarding the plea bargain.

With respect to the prejudice prong, Petitioner fails to demonstrate there is a reasonable probability that but for counsel's errors he would have insisted on going to trial. Counsel testified at the hearing that he advised Petitioner regarding his trial options, including the "I only borrowed it" defense, but Petitioner jumped at the plea offer instead. There is no reasonable probability that Petitioner would have turned down eighteen months' probation in favor of an uncertain chance at a dubious trial defense.

These conclusions follow directly from the trial court's determination that Petitioner's testimony at the hearing was not credible. Petitioner asserts that the Michigan Court of Appeals erred in accepting the trial court's factual findings. However, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Petitioner failed to present either the state court or this court with evidence sufficient to overturn the trial court's determination that the testimony he offered at the evidentiary hearing was not

credible. Indeed, all of Petitioner's on-the-record responses during the plea colloquy are consistent with his counsel's testimony and inconsistent with his contrary representations at the evidentiary hearing. At no point in the plea hearing did Petitioner hint at having a defense to the charges. When asked by the trial court, Petitioner admitted that he broke into the victim's home to look for something to steal. Accordingly, Petitioner was not denied the effective assistance of counsel for his attorney's advice to accept a favorable plea bargain. Nor did the Michigan Court of Appeals unreasonably decide his claim. Accordingly, Petitioner has failed to demonstrate entitlement to habeas relief. The petition is DENIED.

## IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief with respect to his claims because they are devoid of merit.

Finally, Petitioner is denied permission to appeal in forma pauperis because any appeal would be frivolous. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated:  March 24, 2020                                  s/Paul D. Borman
                                                        Paul D. Borman
                                                        United States District Judge